JOSEPH G. KAEMPFER, Trading as TIP TOP TOY COMPANY, Respondent, v. DAVID EISENBERG, Trading as EISENBERG TOY MANUFACTURING COMPANY, Appellant.

First Department, April 21, 1922.

Bills and notes — action on promissory note — defense of no consideration — pleadings — counterclaim for services predicated on contract for sale of manufactured products by defendant to plaintiff, plaintiff to furnish capital for operating defendant's factory and allow defendant percentage on cost of products sold, properly dismissed — counterclaim predicated on same contract alleging breach by plaintiff and damage to defendant improperly dismissed.

In an action on a promissory note wherein the defense was that there was no consideration for the note, a counterclaim for work, labor and services, and materials furnished, based on a contract set forth, providing that plaintiff should furnish defendant capital to operate his factory, the amount secured by the note in suit being part of the capital to be advanced, that plaintiff should purchase of defendant manufactured products to the extent of $50,000 during the contract period, that the capital advanced by plaintiff was to be repaid by deductions from the purchase payments, and that the price to be paid by plaintiff was to be the cost of manufacture plus ten per cent for overhead expenses and fifteen per cent on the total amount for defendant's profit, was insufficient and was properly dismissed for the counterclaim was predicated on an erroneous construction of the contract, which was for the sale of manufactured products and not one of employment, and there was no allegation of breach by the plaintiff.

However, a second counterclaim, based on the same contract, which alleged performance thereof by defendant, a breach thereof by plaintiff and resulting damage to defendant, was sufficient and was improperly dismissed, although defendant erroneously alleged that the contract was one of employment and failed to plead, as a defense to the note, the plaintiff's breach of the contract.

APPEAL by the defendant, David Eisenberg, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of Novem-

ber, 1921, upon the verdict of a jury rendered by direction of the court.

*Leon Sanders* [*Jacob Zelenko* of counsel], for the appellant.

*Shaine & Weinrib* [*Edward C. Weinrib* of counsel], for the respondent.

Laughlin, J.:

The complaint contains two counts. The first is on a promissory note made by the defendant on the 24th of January, 1920, for $3,000, which he promised to pay to the order of the plaintiff, under the name under which the plaintiff was conducting business, ten months after date. The second count was for money advanced for the account of the defendant but that was withdrawn at the trial and the recovery was had on the note only. The answer admits the making and delivery of the note but denies that there was any consideration therefor and contains two counterclaims, both of which the trial court held to be insufficient, and they were dismissed on plaintiff's motion. It is alleged in the first counterclaim that an agreement in writing was made by the parties on the 24th day of January, 1920, and a copy thereof is pleaded; that thereafter the defendant duly performed in behalf of the plaintiff, pursuant to the agreement, work, labor and services, and furnished materials at the agreed price and reasonable value of $13,355.50, no part of which, with the exception of $3,400, has been paid, and that there is a balance of $10,155.50 due and owing from the plaintiff to the defendant and that the defendant has fully performed the agreement on his part excepting in so far as performance thereof was prevented by the plaintiff. The contract recites that the defendant was engaged in manufacturing stuffed doll bodies and was desirous of procuring additional capital and that plaintiff was willing to advance to him the necessary funds to carry on the manufacture of his products with expedition, to the extent therein stated, and was desirous of securing the exclusive production and output of the defendant's factory for the period of one year. Plaintiff promised and agreed to advance to the defendant $3,000 and the defendant agreed to use the money only for the purchase of material and it was agreed that the amount so advanced was to be deducted from payments to be made by the plaintiff to the defendant two months before the termination of the contract, which was to run one year from date. It was further agreed that defendant was to secure the $3,000 so to be advanced by executing to the plaintiff a note for the amount payable in ten months. Plaintiff also agreed to advance to the defendant the further sum of $100 per week during the life of the contract and it was agreed

that such advances should be charged against the defendant's account and deducted by the plaintiff from payment for merchandise after six months from the date of the contract. Plaintiff further agreed to purchase from the defendant during the period of the contract merchandise to the extent of $50,000, and to endeavor to have his purchases spread over the period as evenly as possible and to pay for all merchandise so purchased and delivered and accepted within ten days after the receipt thereof. Defendant gave and granted to the plaintiff the exclusive right and privilege of purchasing the entire output of his factory for the specified period and agreed to manufacture for the plaintiff " such dolls and parts in such quantities " as the plaintiff might from time to time designate and that he would not sell any part or portion of his products or devote any of his time to the manufacture of products for any one other than the plaintiff with the exception of completing a particular specified order. It was agreed that the price to be paid by the plaintiff for the merchandise purchased of the defendant was to be the cost of manufacture, consisting of materials and labor, plus ten per cent for overhead expenses and fifteen per cent on the total amount for profit and that the cost of the products was to be subject to the approval of the plaintiff and that samples of all doll bodies were to be submitted to the plaintiff for approval both as to price and make; and defendant agreed to keep an accurate account of manufacturing cost and to use his best endeavors to keep both operating and manufacturing costs down to a minimum, and plaintiff was given the right at all times during the life of the contract to examine the books and cost sheets of the defendant and to suggest improvements which would tend to cut down the cost of manufacture. This counterclaim is predicated on an erroneous construction of the contract, which plainly was for the sale of doll bodies and parts to be manufactured by the defendant and delivered to the plaintiff and not for the performance of work, labor and service or for materials furnished. The fact that the purchase price was to be determined by the cost of manufacture and a specified percentage thereon for the use of the plant and for profits did not make it a contract of hiring. No breach by the plaintiff is alleged in this counterclaim and it is not alleged that any goods were tendered which plaintiff refused to accept or pay for. The court was, therefore, right in dismissing this counterclaim.

The second counterclaim repeats, by reference, the allegations contained in the first and erroneously alleges that by the terms of the contract plaintiff hired and employed the defendant; but it also alleges that the parties entered upon the performance of the contract and that the defendant duly performed on his part and

thereunder manufactured dolls 'for the plaintiff in the quantities required and sold no dolls to any other party and manufactured none for others, with the exception of completing the order specified in the contract, and kept an accurate account of the cost of the manufacture and used his best' endeavors to keep operating and manufacturing costs down to a minimum and accorded to the plaintiff the right and privilege at all times of examining his books and cost sheets and of suggesting improvements to reduce the cost, and in all other respects duly performed the contract on his part, excepting in so far as he was prevented from so doing by the wrongful acts of the plaintiff; that by a series of acts commencing about the 24th of February, 1920, and culminating about the 9th of March, 1920, plaintiff wrongfully discharged the defendant and refused to permit him to carry out the terms and conditions of the contract and of his employment thereunder and informed the defendant that he would no longer abide by the terms and conditions of the contract and would refuse to permit the defendant further to perform the same and would not make the payments to the defendant which by the contract he had agreed to make and in all other respects refused to perform the contract and has ever since failed, neglected and refused so to do although the defendant was at all times ready, able and willing and still is ready, able and willing to perform the contract on his part and that by reason of the premises defendant has suffered damages in the sum of $10,394.50, no part of which has been paid, although payment thereof has been duly demanded. It thus appears that the second counterclaim is for damages for the plaintiff's breach of the contract and although the defendant, as in the first counterclaim, therein erroneously construes the contract as one for employment, that does not debar him from recovering any damages he has sustained by reason of the plaintiff's repudiation of the contract and refusal to permit the defendant to perform. Plaintiff plainly undertook to purchase from the defendant $50,000 worth of merchandise during the contract year and the damages sustained by the defendant by reason of the plaintiff's failure to live up to the contract are recoverable and may be offset against the note, notwithstanding the fact that the defendant failed to plead as a defense to the note that the plaintiff breached and repudiated the contract on or about the 9th of March, 1920. The money advanced by the plaintiff and secured by the note was payable primarily by deductions from the purchase price of merchandise and the contract plainly contemplated that the defendant was only to pay any balance owing on the note after such deductions when the note matured. On plaintiff's breach of the contract the defendant would be entitled to recover

in any event the specified profit he would have made on orders to the extent of $50,000. It follows that the court erred in dismissing the second counterclaim and that the judgment should be reversed and a new trial granted with costs to appellant to abide the event.

Dowling, Smith, Merrell and Greenbaum, JJ., concur.

Judgment reversed and a new trial ordered, with costs to appellant to abide event.